UNITED STATES, Appellee

v

CYRUS W. HAYNES, Airman First Class, U. S. Air Force, Appellant

9 USCMA 792, 27 CMR 60

No. 11,189

Decided October 7, 1958

*Harry S. Wender, Esquire,* argued the cause for Appellant, Accused. With him on the brief were *Lieutenant Colonel Ellis L. Gottlieb* and *Major Dwight R. Rowland.*

*Major Fred C. Vowell* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Robert W. Michels.*

## Opinion of the Court

HOMER FERGUSON, Judge:

Notwithstanding his plea of not guilty, the accused was found guilty of two offenses of conspiracy to commit extortion and one offense each of sodomy, extortion, and attempt to commit sodomy, in violation of Articles 81, 125, 127, and 80 of the Uniform Code of Military Justice, 10 USC §§ 881, 925, 927, and 880, respectively. Intermediate appellate bodies have affirmed.

The bulk of the prosecution's case

rested upon the testimony of witnesses, co-actors with the accused in the offenses charged, who were armed with letters of immunity. In his opening statement defense counsel stated he intended to prove that the identity of these witnesses and the existence of the offenses were learned from statements made by the accused; that these statements were made during accused's interrogation by Government agents, which included the use of a polygraph machine, preliminary to granting him a higher security clearance; that prior to the interrogation, accused was not only not given a warning that anything he said might be used against him but was assured his answers would be treated with the highest degree of confidence and would not be made the subject of criminal prosecution. The defense called two witnesses and the prosecution immediately objected to their questioning on the grounds that accused's said statements were not in evidence. The Government did not admit to the truth of the defense offer of proof but argued that even if it be true it was immaterial because the prosecution's case rested upon the testimony of witnesses procured through the use of accused's statements rather than upon the statements themselves. After a lengthy out-of-court hearing the law officer sustained the prosecution objections whereupon the defense abandoned its effort to bring into evidence the facts alleged in its offer of proof.

The accused objected to his denial of cross-examination stating that the only way he could ascertain the identity of other desired witnesses was to be permitted to fully cross-examine these two.

We granted upon three issues: (1) whether the accused had been granted any immunity; (2) whether the convicting evidence was admissible; and (3) whether accused's substantial rights were prejudiced by refusal of the court to receive any evidence showing the circumstances surrounding discovery of the offenses and the evidence. For reasons which will appear subsequently we are not presently concerned with the question of immunity as re-

**794**

versal is required by the second and third granted issues.

An accused is to be granted full opportunity to question all witnesses; to question witnesses to ascertain the identity of other desired witnesses; and to be granted such continuances as may be necessary from time to time to locate them. See Alford v United States, 282 US 687, 51 S Ct 218, 75 L ed 624.

We are interested primarily in the propriety of the Government's action in the present case. Obviously, accused's statements would be inadmissible in evidence because of the alleged promises of confidentiality. United States v Washington, 9 USCMA 131, 25 CMR 393. However, as noted supra, the Government chose to rest its case upon the testimony of witnesses whom the defense argued were procured through such statements.

The ramifications of permitting the use of evidence under these circumstances are dire in the extreme. It would in effect be permitting the Government to do indirectly what it is forbidden by Article 31(a), Uniform Code of Military Justice, 10 USC § 831, to do directly. If such receive our sanction there would be nothing to prevent Government agents from procuring information—such as the identity of hostile witnesses, or the location of incriminating property—from the accused by the use of force or other unlawful means and then simply rest the prosecution's case upon the evidence procured through those statements without introducing the statements themselves into evidence at all.

Under the present state of the record, we find the convicting evidence inadmissible. While the issues in the cases from which we quote, infra, were not precisely the same as in the present case, the underlying judicial principle is identical. In Sherman v United States, 356 US 369, 78 S Ct 819, 2 L ed 2d 848, concurring opinion, it was stated:

"The courts refuse to convict an

entrapped defendant, not because his conduct falls outside the proscription of the statute, but because, even if his guilt be admitted, *the methods employed on behalf of the Government to bring about conviction cannot be countenanced.* As Mr. Justice Holmes said in *Olmstead* v *United States*, 277 US 438, 470 (dissenting), in another connection, 'it is desirable that criminals should be detected, and to that end that all available evidence should be used. It is also desirable that the Government should not itself foster and pay for other crimes, when they are the means by which the evidence is to be obtained. . . . [F]or my part I think it a less evil that some criminals should escape than that the Government should play an ignoble part.' Insofar as they are used as instrumentalities in the administration of criminal justice, *the federal courts have an obligation to set their face against enforcement of the law by lawless means or means that violate rationally vindicated standards of justice, and to refuse to sustain such methods by effectuating them.* They do this in the exercise of a recognized jurisdiction to formulate and apply 'proper standards for the enforcement of the federal criminal law in the federal courts,' *McNabb* v *United States,* 318 US 332, 341, an obligation that goes beyond the conviction of the particular defendant before the court. Public confidence in the fair and honorable administration of justice, upon which ultimately depends the rule of law, is the transcending value at stake.

•　•　•　•　•

"As Mr. Justice Roberts convincingly urged in the *Sorrells* case, such a judgment, aimed at blocking off areas of impermissible police conduct, is appropriate for the court and not the jury. 'The protection of its own functions and the preservation of the purity of its own temple belongs only to the court. *It is the province of the court and of the court alone to protect itself and the government from such prostitution of the criminal law.* The violation of the

principles of justice by the entrapment of the unwary into crime should be dealt with by the court no matter by whom or at what stage of the proceedings the facts are brought to its attention.' 287 US, at 457 (separate opinion)." [Emphasis partially supplied.]

In Silverthorne Lumber Co. v United States, 251 US 385, 40 S Ct 182, 64 L ed 319, it was said:

" . . . *The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the court, but that it shall not be used at all.* Of course this does not mean that the facts thus obtained become sacred and inaccessible. If knowledge of them is gained from an independent source they may be proved like any others, but the knowledge gained by the government's own wrong cannot be used by it in the way proposed." [Emphasis supplied.]

And in Coplon v United States, 191 F 2d 749 (CA DC Cir) (1951), cert den 342 US 926, 72 S Ct 363, 96 L ed 690, the court stressed that:

" . . . 'Leads' obtained by wiretapping may not be utilized by the prosecution, but the fact that wires were tapped does not vitiate a criminal prosecution if the government can establish to the court's satisfaction that its proof at the trial had an origin independent of wiretapping."

See also the language in Cash v United States, February 28, 1958 (CA DC Cir), to the effect that "evidence obtained through a *coerced* confession is tainted."

We further find that accused's substantial rights were prejudiced by the court's refusal to allow the the defense to develop its contention that the prosecution's case saw its inception in the accused's alleged statements to Government interrogators.

" . . . The burden is, of course, on the accused in the first instance to prove to the trial court's satisfaction that wire-tapping was unlawfully

**795**

employed. Once that is established—as was plainly done here—*the trial judge must give oportunity, how ever closely confined, to the accused to prove that a substantial portion of the case against him was a fruit of the poisonous tree.* This leaves ample opportunity to the Government to convince the trial court that its proof had an independent origin." [Emphasis supplied.] [Nardone v United States, 308 US 338, 60 S Ct 266, 84 L ed 307.]

Our *dictum* in United States v Fair, 2 USCMA 521, 10 CMR 19, to the effect that even if the admission ▮▮▮▮▮▮ as to the location of a lethal weapon be deemed involuntary, the gun itself would be admissible in evidence, is not controlling and does not express a sound legal principle. Likewise, paragraph 140*a* of the Manual for Courts-Martial, United States, 1951, is declared incorrect insofar as it states. that evidence found by means of an inadmissible confession or admission is itself admissible.

The decision of the board of review is reversed. The record of trial is returned to The Judge Advocate General of the Air Force for action not inconsistent with his opinion. A rehearing may be ordered.

Chief Judge QUINN concurs in the result.

LATIMER, Judge ( dissenting) :

I dissent.

While at first blush this may appear to be a case which requires drastic action to penalize illegal practices of agents of the Government, a proper interpretation of the facts establishes that such is not the situation. Contrary to my associates, I do not believe we are confronted with a failure ▮▮▮▮▮▮ to warn in contravention of Article 31. That Article requires warning to one suspected of an offense and part of the warning consists · of informing the offender of the offense of which he is suspected. In the case at bar, until the accused related his diabolical scheme, military authorities and the Central Intelligence Agency operated under

the belief he was a credit to the service. He was being considered for advancement to a critical and sensitive job, and it was solely to determine his qualifications for promotion that the examination was given. I dare say that Federal authorities were completely taken by surprise at his disclosures for there would be no purpose in choosing him for advancement if he was suspected of an offense. Only a serviceman who is not under a cloud of suspicion is selected for this type of assignment and when that situation prevails I fail to see why a warning is required. And I further do not comprehend what crime the operator of a lie detector machine would use as the basis for a warning. To interpret Article 31 to require a warning under the facts of this case is to read into the Article requirements which are neither expressed nor implied.

I am willing, however to go one step further and assume arguendo that the confession was obtained illegally. But before advancing my reasons for holding the derivative evidence admissible, I prefer to make several general observations.

I am not so willing as my associates to hold that the Chief Judge's language in United States v Fair, ▮▮▮▮▮▮ 2 USCMA 521, 10 CMR 19, does not announce a good principle of law. I concurred in that decision, and I do not believe the principle should be buried without a few words said in its behalf by at least one of its sponsors. Mr. Justice Owen Roberts, in Smith v Allwright, 321 US 649, 88 L ed 987, 64 S Ct 757 (1944), noting a tendency on the part of the Supreme Court to reverse previous decisions, made the following sage comment which I believe can be applied to our present trend. He said the rulings were tending "to bring adjudications of this tribunal into the same class as a restricted railroad ticket, good for this day and train only." Certainly, the boards of review and those in the field who seek guidance in our pronouncement must wonder at the cavalier manner in which we overturn our previous holding. We write for their benefit, and there is

some validity to the contention that law must have some degree of stability. It should not vacillate on a case to case basis and, unless a principle once established is found unsuitable, unworkable, or unsupportable, it should be permitted to crystallize. The rule overthrown in this instance has been supported by the great weight of authority from the early common law until the present time. As a matter of interest, my attention has not been called to a single jurisdiction which rejects the rule and, if the reader is interested in researching the problem, I am convinced he will look in vain for any authority which goes as far as the present decision. That is not to say that cases such as Silverthorne Lumber Co. v United States, 251 US 385, 64 L ed 319, 40 S Ct 182 (1920); Nardone v United States, 308 US 338, 84 L ed 307, 60 S Ct 266 (1939); and Coplon v United States, 191 F 2d 749 (CA DC Cir) (1951), cert den 342 US 926, 96 L ed 690, 72 S Ct 363 (1952), cannot be analogized and considered as authority for the proposition that derivative evidence which is tainted by a prior illegal search or wiretapping is inadmissible. However, there is involved in those cases a sort of disciplinary concept which has not been extended into the area of confessions and, while it can be argued that the rule should be broadened, there is no valid reason for considering that possibility in this instance. Here, the agents of the Government did not violate any statutory or constitutional right of this accused in originally obtaining his statement and, so, to apply the "fruit of the poisoned tree" doctrine is to overlook the simple fact that the tree was not poisoned.

While it must be conceded that I am losing the battle on many fronts, I have not yet been driven from the concept that "where a Manual provision does not lie outside the scope of the authority of the President, offend against the Uniform Code, conflict with another well-recognized principle of military law, or clash with other Manual provisions, we are duty-bound to accord it full weight." United States v Villasenor, 6 USCMA 3, 19 CMR 129, and cases therein cited. Congress gave the President the power to prescribe rules of evidence not inconsistent with the Code, and he promulgated paragraph 140$a$ of the Manual for Courts-Martial, United States, 1951 which provides as follows:

"Although a confession or admission may be inadmissible because it was not voluntarily made, nevertheless, the circumstance that it furnished information which led to the discovery of pertinent facts will not be a reason for excluding evidence of such pertinent facts. For example, the fact that an accused charged with larceny made an involuntary and therefore inadmissible statement to the effect that he stole the missing articles and hid them in his footlocker would not require the exclusion of evidence that the articles were discovered in his footlocker, even though the discovery was made solely because of the information contained in the statement of the accused."

The foregoing provision meets the tests set forth above and it might be pertinent at this point to note it does not announce a principle unknown and unsupported in civilian circles. Dean Wigmore, in his work on Evidence, 3d ed, § 859, has this to say:

"Discovered Facts themselves always admissible. It was once contended that the impropriety of the inducement to the confession tainted the facts discovered in consequence of it, and that they also, as well as the confession, should remain inadmissible. Such a doctrine needs only to be stated to expose its equal lack of logic, principle, and expediency. It was fortunately repudiated at the outset in an opinion which leaves nothing to be said:

"1783, *Warickshall's Case*, 1 Leach Cr. L., 3d ed., 298; a confession of stealing had been made, and in consequence of it the property was found concealed in the lodgings of the accused; but the confession itself was otherwise inadmissible; 'it was contended by her counsel that as the fact of finding the stolen property

in her custody had been obtained through the means of an inadmissible confession, the proof of that fact ought also to be rejected', as obtained by a breach of faith; the Court, NARES, J., and EYRE, B. (after the passage quoted ante, § 823): 'This principle respecting confessions has no application whatever as to the admission or rejection of *facts*, whether the knowledge of them be obtained in consequence of an extorted confession or whether it arises from any other source; for a *fact*, if it exists at all, must exist invariably in the same manner, whether the confession from which it is derived be *in other respects* true or false. Facts thus obtained, however, must be fully and satisfactorily proved without calling in the aid of any part of the confession from which they may have been derived; and the impossibility of admitting any part of the confession as a proof of the fact clearly shows that the fact may be admitted on other evidence; for as no part of an improper confession can be heard, it can never be legally known whether the fact was derived through the means of such confession or not.' "

Wharton, Criminal Evidence, 11th ed, § 600, states substantially the same rule, where it provides:

"Admissibility of evidence of inculpatory facts. The rule is settled that, notwithstanding the inadmissibility of the confession, all facts discovered in consequence of the information given by the accused, and which go to prove the existence of the crime of which he is suspected are admissible as testimony. Thus, where the accused, in confessing, points out or tells where the stolen property is; or, in case of homicide, states where the body can be found; or where the deceased was shot, which is verified by blood stained earth at that spot; or with what weapon, and in what part of the body, the deceased was shot, which is verified by exhuming and examining the body; or where he gives a clue to other evidence which proves the case, all such facts are admissible. But

few courts have questioned this rule.

"It is obvious that a search made as a consequence of information given by the accused must result in the discovery of the inculpatory facts, as otherwise no testimony, either as to the confession, or as to the search instituted in consequence of it, is admissible. In connection with the discovery of the alleged inculpatory facts, there should be proof, beyond a reasonable doubt, of the identity of the property, the body, or other fact. This is the rule with regard to larceny, and in other crimes, identification should be complete before admission of the inculpatory facts. But when the search reveals the inculpatory facts, and there is conclusive identification of such facts, this necessarily brings with it the reception in evidence of the accused's statements in giving the information. It has also been held that evidence of conduct in retrieving property from a hiding place after a confession is also admissible."

If there should be any question about the unanimity of the authorities on this principle, I suggest a reading of the following additional authorities: United States v Nardone, 106 F 2d 41 (CA 2d Cir) (1939), reversed on other grounds, 308 US 338, 60 S Ct 266, 84 L ed 307 (1939); United States v Hunter, 26 Fed Cas 436, No. 15, 424 (CC D DC) (1806); United States v Richard, 27 Fed Cas 798, No. 16,154 (CC D DC) (1823); Annotation, 53 LRA 402; 22 CJS, Criminal Law, § 831; 20 Am Jur, Evidence, § 402; Underhill, Criminal Evidence, 5th ed, § 404; Wharton, Criminal Evidence, 12th ed, § 358.

Apparently my brothers are not willing to accept the principle of law that the foregoing authorities espouse. Unquestionably, it is less favorable to an accused than the rule of this case, but that factor should not cause us to announce bad law. The public is entitled to have its rights considered, and a widespread application of the present rule would very effectively hamper the prosecution of an admitted

798

offender. This case offers a concrete example of how justice might be defeated. The evidence which convicted this accused was supplied by witnesses, including a victim of his extortions, whose only connection with the alleged confession was that their identity was thereby established. If, because the Government first learned their names through the accused, their testimony is not usable, then so far as I am able presently to visualize a rehearing, the victim of a most atrocious extortion scheme must forever remain silent. It thus appears to me the Court goes too far for, unless it can now be shown that the Government was aware of the plan being operated by the accused and the identity of his victims and confederates before he made his statements, there is no way to escape the taint. That concept necessarily follows because, regardless of any subsequent developments, it can always be asserted that when the principal actors were identified by the accused, the knowledge acquired by the Government made independent identification an impossibility.

I would affirm the the decision of the board of review.