UNITED STATES, Appellee

v

ROBERT W. HERBERG, Airman Third Class, U. S. Air Force, and THOMAS V. HUGHES, Airman Basic, U. S. Air Force, Appellants

15 USCMA 247, 35 CMR 219

248

Major Milton E. Kosa argued the cause for Appellants, Accused. With him on the brief was Colonel Robert O. Rollman.

Captain Donald W. Brewer argued the cause for Appellee, United States. With him on the brief was Colonel Emanuel Lewis.

## Opinion of the Court

KILDAY, Judge:

Appellants, tried jointly, were charged with attempted murder. They were found not guilty as charged but guilty of assault with a dangerous weapon, in violation of Article 128, Uniform Code of Military Justice, 10 USC § 928, for shooting at a motorist. Their sentences were almost identical, three years confinement at hard labor and total forfeitures; however, Herberg was sentenced to a bad-conduct discharge and Hughes a dishonorable discharge. Intermediate reviewing authorities affirmed the convictions and sentences and we granted their petitions to consider the legality of their apprehension and the subsequent search of their car.

On the evening in question, an airman on guard at the main gate of Eielson Air Force Base, Alaska, observed a vehicle come through the gate with the "trunk up and tail lights [sic] out." He reported the matter by telephone to Staff Sergeant Rogers, the air police desk sergeant. Rogers, upon receipt of this information, dispatched Airman Rego, by radio, to "check out" the car. A few minutes later Rego called back and stated he had found the vehicle and would be off the air "checking it out."

Subsequently, another vehicle approached the gate and its driver reported to the guard that he had been run off the road and inquired if an old Ford with the "rear part out of the righthand back taillight" had come through the gate. The guard reported this complaint by telephone to Sergeant Rogers stating that he had an airman at the gate who "had

a complaint against the vehicle he had called me about earlier, that the vehicle had supposedly ran [sic] this airman off the highway." Rogers thereupon instructed the guard to have the complainant come to the office and when Airman Rego came back on the air, he instructed Rego to "apprehend the subjects in the vehicle and bring them in to Air Police Operations."

When Herberg and Hughes arrived at the station, Rogers asked them for their identification cards and, after ascertaining from Rego that Herberg was the driver of the car, he asked him for his driver's license and proof of ownership of the auto. Herberg showed Rogers his identification card and driver's license. He informed Rogers that he did not possess proof of his ownership of the car, since he had just bought it, and produced an Alaska state title in the name of an unidentified person. Rogers then asked Herberg for the registration slip for the car and the latter replied that he didn't have it on him but "thought it was in the vehicle." Rogers then ordered Rego to go out to the car, which was parked outside the building and "check to see if he could find the registration." Rego's search of the car for the registration slip was negative but he reported to Rogers that he had seen a gun under the driver's seat. Upon ascertaining from the appellants that they had borrowed the gun and that it was unloaded, Rogers ordered Rego to return to the car, get the gun, and bring it into the office. Thereafter, Rogers notified Sergeant Wentworth and took no further part in the investigation.

Sergeant Wentworth, aware of a report, made earlier that evening to the Alaska State Police, to the effect that a motorist was fired upon from a passing vehicle, and that appellants had similarly reported shots fired at their vehicle, notified that organization of the events at the base, related above. The ensuing interrogation of the appellants by the State Police, air police, and agents of the Office of Special Investigations, eventually led to confessions by both Herberg and Hughes that the weapon discovered in the car in which they were apprehended had been used by them in the commission of the offense for which they were ultimately convicted.

The appellants contend primarily that their apprehension by Airman Rego was unlawful, by reason of a lack of probable cause to believe a crime had been committed and that they were responsible therefor, and that any search conducted as incident thereto was therefore unlawful. But assuming *arguendo* that the apprehension was lawful, appellants further maintain that the subsequent search was unreasonable and therefore unlawful. In essence, the appellants argue that: (1) The car, at time of the search, was in the constructive possession of the appellants, having been parked by them in front of the building when they were taken inside and not seized or impounded by the police, and hence not subject to a lawful search; (2) even if it could be successfully argued that the car was in the constructive possession of the police, nevertheless, under these circumstances, the appellants having been apprehended and removed from the vicinity of the auto, there was no reason to believe that immediate action was demanded to prevent the removal or disposal of property believed on reasonable grounds to be criminal goods, or any necessity for the apprehending officer to protect himself or to prevent escape; and (3) there was no freely given consent by Herberg to Rego's search of the auto.

The Government counters by asserting that probable cause clearly existed for the apprehension of appellants by reason of the information supplied to the gate guard that an auto, similar in description to that in which the appellants were riding, had allegedly just moments before been involved in an effort to run the complainant off the road—concededly a criminal offense. It contends the subsequent search of the car and seizure of the weapon was lawful on the following grounds: (1) As a search incident to apprehension; (2) as a search conducted with the implied consent of one of the accused; and (3) as a reasonable police response to Herberg's affirmative assertion that evidence of his ownership could be found in the vehicle.

Turning first to the issue of the lawfulness of the appellants' apprehension, we find ourselves in  agreement with the Government. It is clear from the evidence that when the auto in question entered the base, its condition was such as to attract the attention of the guard and to motivate him to call headquarters and report the obvious infractions of safety. When a few moments thereafter this same guard received a complaint of a moving violation, involving a car of the same general description and defects, he thereupon again called his headquarters and supplemented his previous report. Since this report alleged the commission of a criminal offense, and reasonable grounds existed for believing that the recently observed automobile was involved therein, these data taken as a whole form a solid framework for the probable cause required in this case for apprehension of the appellants. The fact that the complaint was not sworn to, corroborated, or verified does not vitiate the existence of probable cause, as alleged by the appellants. Here the complainant was the victim and not an unidentified informant as in the cases cited by the appellants in their contention. It is recognized that complaints registered by actual victims of offenses, unlike the reports of unidentified informers, do not require the same corroboration or verification in order to serve as probable cause for an arrest. See Washington v United States, 263 F2d 742 (CA DC Cir) (1959), and the

following cases cited therein: Draper v United States, 358 US 307, 3 L ed 2d 327, 79 S Ct 329 (1959); Smith v United States, 254 F2d 751 (CA DC Cir) (1958), cert den, 357 US 937, 2 L ed 2d 1552, 78 S Ct 1388; Christensen v United States, 259 F2d 192 (CA DC Cir) (1958). Nor is the fact that the apprehension was made by an air policeman, other than the one to whom the complaint was made, fatal to this issue. It is well settled that a valid arrest may be made by a police officer, for a reported crime not committed in his presence, solely on the strength of information passed on to him by other police officers or on the strength of broadcast descriptions of persons and vehicles. United States v Bianco, 189 F2d 716 (CA 3d Cir) (1951) (received by telephone); United States v Juvelis, 194 F Supp 745 (D NJ) (1961) (by teletype or police radio); Ellis v United States, 264 F2d 372 (CA DC Cir) (1959) (by police radio).

The law generally recognizes that, in the interest of effective law enforcement, there is a need for freedom on the part of police officers to function not only on the basis of information personally known to them or observed first hand but also on the basis of the totality of information known to the police organization as a whole. As was stated by the court in Williams v United States, 308 F2d 326, 327 (CA DC Cir) (1962):

". . . We avail ourselves of the occasion to make it clear that in a large metropolitan police establishment the collective knowledge of the organization as a whole can be imputed to an individual officer when he is requested or authorized by superiors or associates to make an arrest. The whole complex of swift modern communication in a large police department would be a futility if the authority of an individual officer was to be circumscribed by the scope of his first hand knowledge of facts concerning a crime or alleged crime.

"When the police department possesses information which would support an arrest without a warrant in the circumstances, the arresting officer, if acting under orders based on that information, need not personally or first hand know all the facts. The test, as we have said, is whether a prudent and cautious officer in those circumstances would have reasonable grounds—not proof or actual knowledge—to believe that a crime had been committed and that appellant was the offender. Jackson v United State, 112 US App DC 260, 302 F2d 194 (1962); Dixon v United States, 111 US App DC 305, 296 F2d 427 (1961); Bell v United States, 102 US App DC 383, 254 F2d 82, cert denied, 358 US 885, 79 S Ct 126, 3 L Ed 2d 113 (1958)."

We have little difficulty in equating the situation spoken of in the above-quoted opinion with the case at bar.

In light of the facts in this case, we hold that the apprehension of the appellants was based on probable cause, and accordingly lawful.

Having so found, we turn next to the question of the legality of the search of appellant's auto. We are at once impressed by the similarity of the legal question in this case and that decided by the Supreme Court in Preston v United States, 376 US 364, 11 L ed 2d 777, 84 S Ct 881 (1964). In *Preston*, police officers in Newport, Kentucky, arrested the defendant and two other men sitting in a parked car in a business district. Before arresting them, the police had received a report at 3:00 a. m. that three men were "acting suspiciously." Upon questioning as to the reason for their presence, the men gave answers which the officers testified were evasive. All three were unemployed and had only twenty-five cents between them. *"One of the men said that he had bought the car the day before (which later turned out to be true), but he could not produce any title."* 376 US at page 365. (Emphasis supplied.) All three men were arrested for vagrancy and taken to the station; their vehicle was driven to the station by an officer and later towed to a garage. At the station, police officers were sent to the garage to search the car. They did so and found two loaded pistols, but were

unable to get in the trunk. Sent back by detectives, they entered the locked trunk through the back seat and found caps, stocking masks, rope, an illegally manufactured license plate, and other paraphernalia. After the search one of those arrested confessed that he and the others intended to rob a bank in Berry, Kentucky.

On appeal, the Supreme Court in a unanimous opinion held that the search was illegal. Pointing out that different considerations apply to searches of motor vehicles than houses, and assuming the lawfulness of the arrest, the Court declared in Preston v United States, supra, pages 367–68:

". . . Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest. Agnello v United States, supra, 269 US, at 31, 70 L ed at 148. Here, we may assume, as the Government urges, that, *either because the arrests were valid or because the police had probable cause to think the car stolen,* the police had the right to search the car when they first came on the scene. But this does not decide the question of the reasonableness of a search at a later time and at another place. See Stoner v California, 376 US 483, 11 L ed 2d 856, 84 S Ct 889. The search of the car was not undertaken until petitioner and his companions had been arrested and taken in custody to the police station and the car had been towed to the garage. At this point there was no danger that any of the men arrested could have used any weapons in the car or could have destroyed any evidence of a crime—assuming that there are articles which can be the 'fruits' or 'implements' of the crime of vagrancy. Cf. United States v Jeffers, 342 US 48, 51–52, 96 L ed 59, 64, 72 S Ct 93 (1951). Nor, since the men were under arrest at the police station and the car was in police custody at a garage, was there any danger that the car would be moved out of the locality or jurisdiction. See Carroll v United States, supra, 267 US, at 153, 69 L ed at 551. We

think that the search was too remote in time or place to have been made as incidental to the arrest and conclude, therefore, that the search of the car without a warrant failed to meet the test of reasonableness under the Fourth Amendment, rendering the evidence obtained as a result of the search inadmissible." [Emphasis supplied.]

This decision seems directly in point with the case at bar. Air policeman Rego had apprehended the appellants following a report of a criminal offense and had taken them to the station where they were to be viewed by the complaining witness. They were warned under Article 31, Uniform Code of Military Justice, 10 USC § 831, personally searched, and asked for evidence of ownership of the auto. Rego was then sent out to search the car for a registration card which was never found. Thus, their apprehension was completed, and "there was no danger that any of the men arrested could have used any weapons" or "could have destroyed any evidence of a crime." Preston v United States, supra. It might be argued that appellant's car had not been impounded as in *Preston* but was merely parked in front awaiting their return and could, subsequently, have been "moved out of the locality or jurisdiction." But this is a distinction without a difference for the appellants were in custody and so long as a question remained as to ownership of the auto, it is quite apparent that Sergeant Rogers would not have allowed the vehicle to be removed.

Under the rationale in *Preston* and cases cited therein, this was simply not a search incident to lawful apprehension and was unreasonable under the terms of the Fourth Amendment. See also Travers v United States, 144 A2d 889 (Mun Ct App DC) (1958), where the appellant was arrested for several traffic offenses and while being booked a policeman obtained his car key, searched the car and found a blackjack under the seat. There the court said:

"In the present case, if appellant's

car had been searched at the time and place where the arrest occurred, as an incident to the arrest, such a search would have been proper. The police would certainly have such a right if for no other reason than their own protection, in view of appellant's highly suspicious behavior, although the search could not be justified as one aimed at discovering the 'fruits and evidences' of the crime, since there are no 'fruits and evidences' of the instant crimes, i.e., traffic violations. However, after appellant had been safely delivered to the custody of the police station, there was no longer any necessity for the police to search the car in order to protect themselves, or to discover a means that might be used to effect an escape from custody. Consequently, the search must have been in the nature of an exploratory search which is forbidden. The search, therefore, was illegal, and its product, the blackjack, should have been suppressed as evidence."

See also Williams v United States, 170 A2d 233 (Mun Ct App DC) (1961); State v Cuellar, 25 Conn Sup 229, 200 A2d 729 (1964). Cf. Adams v United States, 336 F2d 752 (CA DC Cir) (1964).[1]

While the search was not made incidental to lawful apprehension, was it conducted with consent of Herberg, or as a reasonable response to his affirmative assertion that evidence of his ownership could be found in the vehicle, as contended by the Government? We think not.

The Government admits an awareness of its burden to establish consent by clear and convincing evidence, and concedes that mere acquiescence in a police officer's announced or indicated purpose to search is not consent. Johnson v United States, 333 US 10, 92 L ed 436, 68 S Ct 367 (1948); United States v Justice, 13 USCMA 31, 32 CMR 31; United States v Berry, 6 USCMA 609, 20 CMR 325. It alleges, however, that in this case there was no demand to search or even an announced intention to do so but rather an acceptance of a clear invitation by Herberg when he indicated the registration might be in the car. It takes comfort in the fact that there was no evidence of coercion and that the "invitation" was preceded by a warning under Article 31. Citing United States v Insani, 10 USCMA 519, 521, 28 CMR 85, the Government believes that such warning "may be considered in determining whether the accused consented to the search or merely yielded to the color of authority."

In Whitley v United States, 237 F2d 787 (CA DC Cir) (1956), the court found no evidence of voluntary consent to search where the defendant, upon being arrested and questioned as to the whereabouts of the money, replied that it was in her purse. And in Judd v United States, 190 F2d 649 (CA DC Cir) (1951), relied on by the court in *Whitley*, consent was found to be lacking despite the arrested defendant's assertion to the police that " 'he had nothing to conceal or hide out there, and it was perfectly all right for us to go out there.' " A waiver or consent to search must be proved by clear and positive testimony, and it must be established that there was no duress or coercion, actual or implied. Amos v United States, 255 US 313, 65 L ed 654, 41 S Ct 266 (1921). See also Channel v United States, 285 F2d 217 (CA 9th Cir) (1960); Catalanotte v United States, 208 F2d 264 (CA 6th Cir) (1953); United States v Minor, 117 F Supp 697 (ED Okla) (1953).

In light of these opinions and in view of the fact Herberg was in custody, we cannot equate his "invitation" to search to a freely given consent.

Nor do we agree that search of the automobile was a reasonable police response to Herberg's affirmation of ownership. The appellants had been apprehended for a criminal offense and

---

[1] For a collection of cases and commentary on Searches and Seizures Incident to Traffic Violations, see 6 Saint Louis University Law Journal 506 (1961), and a reply thereto in 7 Saint Louis University Law Journal 1 (1962).

removed from their vehicle into the station. While awaiting the arrival of the complaining witness, Sergeant Rogers conducted an interview of the appellants as to their identity and ownership of the vehicle. Not being satisfied with Herberg's explanation that the title paper to the vehicle reflected ownership in another by reason of the fact that he had just purchased the car, and presumably had not yet had time to effect the necessary change, Sergeant Rogers directed Airman Rego to search the auto for additional evidence of ownership—the registration card. Such a search, in the context of this case, can only be viewed as an exploratory search for evidence to be used against Herberg in a possible future criminal proceeding. Searches for such a purpose have long been condemned by the Supreme Court as violative of the Fourth Amendment. Gouled v United States, 255 US 298, 65 L ed 647, 41 S Ct 261 (1921); United States v Lefkowitz, 285 US 452, 76 L ed 877, 52 S Ct 420, 82 ALR 775 (1932). See also United States v Vierra, 14 USCMA 48, 33 CMR 260, in this Court.

That this was a search for additional evidence of possible guilt is abundantly clear. For if the title papers which Rogers already had were in another's name, it is quite logical to believe the registration card would also reflect such ownership. At least it would not reflect that the car was registered in Herberg's name, for he admittedly had just purchased the auto and had not had time to transfer ownership. Granting the Government's argument that a "police officer's conduct should be predicated on the 'total atmosphere,' not as it appears to a legal technician, but as it appears to a reasonable, prudent and responsible officer" (United States v Summers, 13 USCMA 573, 575, 33 CMR 105, 107), we perforce must hold that under the rationale of Gouled v United States, United States v Lefkowitz, and United States v Vierra, all supra, the legality of this search cannot be upheld.

Appellants contend that since the search was unlawful, it follows that the law officer erred in holding to the contrary, permitting the prosecution to offer testimony concerning the discovery of the gun, and precluding the appellants from offering evidence to the fact finders regarding the illegality of the search and arguing the inadmissibility of appellants' confessions as the product thereof, citing Silverthorne Lumber Co. v United States, 251 US 385, 64 L ed 319, 40 S Ct 182 (1920); United States v Haynes, 9 USCMA 792, 27 CMR 60; United States v Bennett, 7 USCMA 97, 21 CMR 223. We agree.

Accordingly, the decision of the board of review is reversed. The findings and sentence are set aside. The record of trial is returned to The Judge Advocate General of the Air Force. A rehearing may be ordered.

Judge FERGUSON concurs.

QUINN, Chief Judge (dissenting):

If the logic of the Supreme Court's decision in the *Preston*[1] case requires the conclusion that the search in this case is illegal, then I believe we have entered a topsy-turvy world in which the reasonable is unreasonable and common sense is nonsense. The Court of Appeals for the District of Columbia Circuit recently rejected a similar appeal to the logic of *Preston* with the observation that it would not be the "first court" in the land to be shackled to a supposed *Preston* syllogism. Adams v United States.[2]

If *Preston* demands the result reached by the majority in this case, then perhaps we should hope that the Supreme Court will disavow it, just as it reversed *Trupiano*[3] by *Rabinowitz*.[4] But *Preston* does not stamp as unreasonable and illegal what was done here.

Air Policeman Joseph R. Rego apprehended the accused at Eielson Air Force Base. The majority concedes the apprehension was lawful. Had the policeman then and there looked in the

[1] Preston v United States, 376 US 364, 11 L ed 2d 777, 84 S Ct 881 (1964).
[2] Adams v United States, 336 F2d 752 (CA DC Cir) (1964).
[3] Trupiano v United States, 334 US 699, 92 L ed 1663, 68 S Ct 1229 (1948).
[4] United States v Rabinowitz, 339 US 56, 94 L ed 653, 70 S Ct 430 (1950).

automobile, and seen and confiscated the gun, the seizure of the weapon would undeniably be legal.[5] The policeman, however, did not attempt to put himself in the awkward position of checking out a vehicle, while exercising control over the two accused. The Air Force station was just a half block away; so he directed the accused to proceed to the station house. There, Rego identified the accused Herberg as the driver. Herberg contended he was the owner of the car, but could not produce proof of ownership. It was at this point that Rego went out to the automobile to look for the registration certificate which, under local law, was "supposed to [be] . . . in the vehicle." Was this action unreasonable? Was it so separated in time, place, and circumstance from the accused's apprehension as to require us to brand the seizure of the gun as an illegal act? I think not.

In United States v Ross,[6] we considered the general problem of a search incident to a lawful arrest where there was an actual physical separation between the person of the accused and the place of the search. We held that if the place of apprehension and the place of search are intimately connected, then the arrest justifies a particularized search. The rationale of *Ross* applies to this case. The accused were in the police station; the car was just outside. In my opinion, the car and the accused were still so connected in time, place, and circumstance as to make the automobile subject to search incident to the arrest. I am satisfied the long-established rule that a police officer can, without violating the Constitution, search a vehicle incident to a lawful arrest of the driver and passenger does not demand that the search be made at the immediate place of arrest. A search of the arrested accused can be made either at the place of arrest or at the station house when he is booked. In my opinion, incidental search of the car can be similarly deferred. I am not facetious in saying I think it unreasonable and unrealistic to imply, as the principal opinion does, that the car cannot be searched unless it is taken into the station house with the accused. I refuse to accept the conclusion that, because the car was left outside when the accused were taken inside, the connection between them was so attenuated as to make it constitutionally unreasonable to search the car incident to the arrest.

This case is just not *Preston*. Here, the car was searched contemporaneously with the arrest; it was searched at the police station at the time the accused were booked; and the vehicle was not in police custody. It was the converse of all these factors that induced the Supreme Court in *Preston* to hold the search and seizure illegal. This is evident from the following excerpt from its opinion:

". . . Here, we may assume, as the Government urges, that, either because the arrests were valid or because the police had probable cause to think the car stolen, the police had the right to search the car when they first came on the scene. But this does not decide the question of the reasonableness of a search at a later time and at another place. See Stoner v California, 376 US 483, 11 L ed 2d 856, 84 S Ct 889. The search of the car was not undertaken until petitioner and his companions had been arrested and taken in custody to the police station and the car had been towed to the garage. . . . Nor, since the men were under arrest at the police station and the car was in police custody at a garage, was there any danger that the car would be moved out of the locality or jurisdiction. See Carroll v United States, supra, 267 US, at 153, 69 L ed at 551. We think that the search was *too remote in time or place to have been made as incidental to the arrest* and conclude, therefore, that the search of the car without a warrant failed to meet the test of reasonableness under the Fourth Amendment, rendering the evidence obtained as a result of the search inadmissible." [Preston v United

[5] United States v Summers, 13 USCMA 573, 33 CMR 105.

[6] United States v Ross, 13 USCMA 432, 32 CMR 432.

States, 376 US 364, 367–368, 11 L ed 2d 777, 84 S Ct 881 (1964).] [Emphasis supplied.]

I would affirm the decision of the board of review.