## UNITED STATES

v.

**David A. EDGE, 381 60 8964 Private First Class (E–2) U. S. Marine Corps.**

**NCM 75 1734.**

U. S. Navy Court of Military Review.

Sentence Adjudged 7 Feb. 1975.

Decided 22 March 1976.

jurisdiction, pursuant to *O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969).

LCDR T. D. Keating, JAGC, USN, Appellate Defense Counsel.

LT Homer S. Pointer, JAGC, USNR, Appellate Government Counsel.

### DECISION

FULTON, Judge:

Appellant was convicted contrary to his plea of wrongful possession of marijuana in violation of Article 92, UCMJ. The approved sentence provides for a bad conduct discharge, confinement at hard labor for four months, forfeiture of $200.00 pay per month for four months and reduction to pay grade E–1.

Appellant propounds the following errors:

I. THE MILITARY JUDGE ERRED IN NOT GRANTING THE DEFENSE MOTION TO SUPPRESS PROSECUTION EXHIBITS 1 AND 2 AS THE FRUITS OF A SEARCH INCIDENT TO AN UNLAWFUL APPREHENSION.

II. THE STAFF JUDGE ADVOCATE'S REVIEW WAS PREJUDICIALLY DEFICIENT AND MISLEADING.

We believe the assigned errors lack merit and affirm.

### I

### *Probable Cause*

Paragraph 19 of the *Manual for Courts-Martial, United States, 1969* (Revised edition) and Article 7b, Uniform Code of Military Justice, 10 U.S.C. § 807, authorized Staff Sergeant Pelayo of the Provost Marshall's office and CID to apprehend the appellant.

"In this case there is no question but that the arresting officers were authorized under existing regulations to apprehend persons subject to the Code. The question is whether the officers here concerned were operating under circumstances which would raise a reasonable belief that an offense had been committed and the person they were apprehending committed it. . . ." *United States v. Ball,* 8 U.S.C.M.A. 25 at 31, 23 C.M.R. 249 at 254 (1957).

In other words:

". . . the person making an apprehension must have a reasonable belief that an offense has been committed and that the person apprehended committed it. . . ." *United States v. Brown,* 10 U.S.C.M.A. 482 at 488, 28 C.M.R. 48 at 54 (1959).

Probable cause is a prerequisite to a valid apprehension:

"The crucial element in a search question is the existence of probable cause. Without probable cause an arrest without a warrant is invalid and necessarily a search conducted as an incident to the arrest is also invalid." *United States v. Ness,* 13 U.S.C.M.A. 18 at 22, 32 C.M.R. 18 at 22 (1962).

In *United States v. Herberg,* 15 U.S.C.M.A. 247, 35 C.M.R. 219 (1965), the Court of Military Appeals quoted with approval *Williams v. United States,* 113 U.S.App.D.C. 371, 308 F.2d 326, 327 (1962):

"The test, as we have said, is whether a prudent and cautious officer in those circumstances would have reasonable grounds—not proof or actual knowledge—to believe that a crime had been committed and that appellant was the offender."

We will apply the probable cause, prudent and cautious officer, and reasonable belief tests. *Cf. United States v. Morales,* 49 C.M.R. 458 (1974); "Probable cause to search exists if the facts and circumstances justify a prudent man in concluding that an offense has been or is being committed." [Citations omitted.] *United States v. Owens,* 36 C.M.R. 904, 911 (A.F.B.R. 1966); *United States v. Vorrath,* 40 C.M.R. 334 (A.B.R. 1968).

■ To support probable cause based on evidence furnished by an informant, it must be established that the informant was reliable or his information credible and that the apprehension of the accused was justified by reasonably trustworthy information. *United States v. Stackhouse,* 23 U.S.C.M.A. 118, 48 C.M.R. 679 (1974); *United States v. Scarborough,* 23 U.S.C.M.A. 51, 48 C.M.R. 522 (1974).

■ We find that the following facts of record provided probable cause to apprehend the appellant:

(1) Captain Nurout, Commanding Officer of H and S Company, 1st Shore Party Battalion, was contacted on 6 November 1974 by Corporal Paulmer concerning a conversation with appellant. (R. 74, 122).

(2) Captain Nurout had known Corporal Paulmer very well for seven months; saw him on a daily basis; and considered him a Marine in the excellent, outstanding range. (R. 77, 88).

(3) The informant, Paulmer, had furnished information on illegal or improper activities three or four times before. (R. 77).

(4) This past information was correct but was never enough for judicial proceedings. (R. 78).

(5) On 6 November between 0930 and 1030, Paulmer told Captain Nurout he had talked to appellant during the morning hours concerning a marijuana transaction which was to take place between 1130 and 1300 that day. (R. 74, 76, 78).

(6) Paulmer further related to Captain Nurout that appellant had three cans of marijuana in his car; that at lunch time appellant would drive into town and pick up more marijuana (approximately seven cans); that appellant would return to the Del Mar area aboard the base; and that Corporal Bradshaw would be an accomplice or partner. (R. 74–76).

(7) Paulmer stated that appellant would be driving a white late model Buick or Oldsmobile and would pick up a person or persons to whom he would sell the marijuana. (R. 75–76, 87).

(8) About 1115 (R. 89), Captain Nurout told Staff Sergeant Pelayo, an agent of the Provost Marshall and CID, the following:

A. All the information he, Captain Nurout, knew about the reliability of the informant, Paulmer. (R. 79, *cf.* R. 94).

B. The informant said the appellant and Corporal Bradshaw had some marijuana and that they would be going to Oceanside during the lunch hour to pick up five more cans of marijuana. (R. 89, 96).

C. They, appellant and Bradshaw, would return to the base and sell the marijuana during the lunch hour that day. (R. 89).

D. They would be driving around in the "21 Area" in a white Buick or Oldsmobile while they conducted a sale of marijuana. (R. 90).

(9) Staff Sergeant Pelayo determined that Corporal Bradshaw owned a blue Ford aboard Camp Pendleton. (R. 90).

(10) Staff Sergeant Pelayo and Staff Sergeant Goodman toured the "21 Area" in a private vehicle looking for the white Buick. (R. 90).

(11) Corporal Bradshaw's vehicle was located, and Pelayo and Goodman parked across the street from it where they had a view of the roads leading into the "21 Area" and vicinity. (R. 91).

(12) While they were so parked, a white Buick pulled up in front of 1st Shore Party Battalion Headquarters. The sole occupant was a man wearing the uniform of the day who went into the Headquarters building. (R. 91, 95).

(13) The man who entered the building was the driver of the vehicle. (R. 91).

(14) The driver returned with a man wearing utilities and both entered the car. (R. 91).

(15) The Buick was driven up 11th Street and was out of sight from Pelayo and Goodman. (R. 91, 95).

(16) The Buick turned on B Street and Pelayo and Goodman followed on C Street. (R. 91).

(17) The Buick matched the description given by Captain Nurout. (R. 91).

(18) Pelayo turned on 12th Street and noticed that the Buick was also on 12th Street. (R. 91).

(19) At the intersection of E Street and 12th Street (Del Mar, Camp Pendleton) about fifty to seventy-five yards away, the Buick was stopped in the center of the street adjacent to a blue Dodge van. (R. 92).

(20) Pelayo and Goodman saw the driver of the Buick outside his vehicle talking to the driver of the van. (R. 92).

(21) The driver of the Buick handed something into the driver of the van. (R. 92).

(22) There were now three passengers in the rear seat of the white Buick. (R. 92).

(23) The Buick then turned right on E Street and Pelayo followed. (R. 92).

(24) As Pelayo passed the blue van he recorded the license number. (R. 92).

(25) Pelayo observed that the three people in the rear seat of the Buick were passing something back and forth, but he could not tell what it was. (R. 92).

(26) Pelayo followed five to twenty yards behind the Buick and on 9th Street told the vehicle to pull over. A passenger in the back seat appeared to place something under a pile of clothes. (R. 93).

Staff Sergeant Goodman went to the drivers' side and Pelayo went to the other side of the vehicle. The personnel in the Buick were placed face down on the ground and searched. The passenger from the front seat next to the driver, Private Carter, had a plastic bag of marijuana in his utility jacket. It was ascertained that the appellant was the owner of the vehicle and two plastic bags of marijuana were observed near the front passenger door. Subsequently nine bags of marijuana were found in the car. The blue van was stopped, and Goodman found a plastic bag of marijuana and a pipe in PFC Stolz's field jacket. He also found a bag of marijuana in a box beside the front passenger seat of the van. Corporal Bradshaw was not in the Buick nor in the van.

The informant was an excellent to outstanding Marine and had furnished correct information in the past. The white Buick/Oldsmobile appeared at exactly the time and place the informant said it would. Personnel were picked up as the informant said they would be. The driver of the Buick gave something to the driver of the van. The back seat passengers appeared to be examining some item and passing it around.

Was Staff Sergeant Pelayo apprised of sufficient underlying facts to conclude that informant Paulmer was credible or his information reliable? *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *United States v. Llano,* 23 U.S.C. M.A. 129, 48 C.M.R. 690 (1974). If so, did Pelayo possess sufficient trustworthy facts to form a reasonable belief that an offense had been committed and that appellant committed it? *Manual for Courts-Martial, United States, 1969* (Revised edition), par. 152; *United States v. Brown, supra, United States v. Ness, supra.* We answer in the affirmative. We find more than ample evidence that the apprehension of appellant was based on probable cause. Agent Pelayo possessed reasonably trustworthy information that justified the apprehension of appellant. *United States v. Stackhouse,* 23 U.S.C.M.A. 118, 48 C.M.R. 679 (1974).

Probable cause is not synonymous with *prima facie* guilt or guilt beyond a reasonable doubt. Probable cause deals with probabilities; *see United States v. Scarborough, supra.* We find that the informant was reliable. When the item was passed to the blue van and when the Buick passengers

were observed passing something around, at that point the informants information became highly credible. Thus, the apprehension was based on probable cause, and the search incident to the apprehension was in accordance with the law. The assignment lacks merit.

## II

### *The Review*

■ We agree with the Government that the staff judge advocate's review was not prejudicially misleading. We believe that it is a logical deduction from the evidence that a transaction of some kind took place between the Buick driver and the van driver and the review placed such deduction not under the summary of the evidence but under the heading *"Discussion."*

The evidence spelled out the choices available to the supervisory authority. *United States v. Hooper,* 11 U.S.C.M.A. 128, 28 C.M.R. 352 (1960). We are convinced that the supervisory authority was provided with adequate guidelines to judge appellant's guilt or innocence and the issue of probable cause. *Cf. United States v. Smith,* 23 U.S.C.M.A. 98, 48 C.M.R. 659 (1974).

The conclusion that a transaction took place between appellant and the driver of the van was compelled by the evidence. The assignment lacks merit.

The findings and sentence approved below are affirmed.

Senior Judge NEWTON and Judge LAPPIN concur.