UNITED STATES, Appellee

v

JOHN W. DECKER, JR., Specialist Five,
U. S. Army, Appellant

16 USCMA 397, 37 CMR 17

No. 19,418

November 18, 1966

*Captain Paul V. Melodia* argued the cause for Appellant, Accused. With him on the brief were *Lieutenant Colonel Martin S. Drucker* and *Captain Peter A. Anderson.*

*Major John F. Webb, Jr.,* argued the cause for Appellee, United States. With him on the brief were *Colonel Joseph J. Crimmins, Colonel Peter S. Wondolowski, Lieutenant Colonel Francis M. Cooper,* and *Captain Joseph H. Crosby.*

## Opinion of the Court

QUINN, Chief Judge:

The accused contends his conviction for larceny, in violation of Article 121, Uniform Code of Military Justice, 10 USC § 921, was based upon improperly admitted evidence.

Some of the challenged evidence was directly obtained in a search which the accused maintains denied him the protection accorded by the Fourth Amendment to the Constitution of the United States. It is also alleged that other evidence was the indirect product of the search, and for that reason was similarly inadmissible in evidence.

Search and seizure present "recurring questions" to the courts. United States v Rabinowitz, 339 US 56, 63, 94 L ed 653, 70 S Ct 430 (1950). This is so because the Fourth Amendment does not prohibit all searches and seizures, but only such as are "unreasonable." The constitutionality of a particular search depends "upon the facts and circumstances—the total atmosphere of the case." Rabinowitz, supra, 339 US, at page 66; United States v Summers, 13 USCMA 573, 575, 33 CMR 105.

About noon on May 18, 1965, Private First Class Howard R. Pullam reported to the military police at Fort Riley, Kansas, that his 1958 Chevrolet sedan had been stolen from the battalion parking lot. A military police patrol had discovered a similar car in a secluded, wooded gully on the post. Pullam was taken to the area. He identified the car as his own, and determined it had been stripped of all the tires and wheels, including the spare from the trunk, the voltage regulator, the battery, and other operating parts. Also stolen were a number of quart cans of Permalube motor oil and a toolbox containing various tools. Agent Byron D. Roberts of the Fort Riley Criminal Investigations Detachment obtained a description of the stolen articles. He requested the civilian police of Junction City, a community near the post, to be "on the lookout for the stolen parts." That night, he received a telephone call directing him to a house in Junction City. He went to the premises and met Private First Class Geary Moulster, the occupant of the house. Moulster gave him "permission to search the property."

Accompanied by Moulster, Roberts conducted a search for Pullam's property. In the backyard, he found a 1955 Chevrolet station wagon. In his opinion, the vehicle was "immobile" and could not be "driven off the property." On the ground, under the vehicle, were five tires, with wheels. Two of these "matched" the description of two of the stolen tires and wheels. Roberts based his identification upon the fact that one of the tires had affixed to it half of a plastic whitewall ring, and the other bore a trade name which made it "a rather odd tire in this area."[1] Also on the ground were some empty quart oil cans bearing the Permalube brand name. From the outside, Roberts looked through the windows of the vehicle and saw in the rear two more cans of Permalube oil. Roberts believed the wheeled tires and the oil were part of the property stolen from Pullam. He went to the front of the car and raised the hood. Inside the motor compartment he observed that the battery, distributor, and voltage regulator appeared to be newly installed. The battery was the same kind as that stolen from Pullam. Either after Roberts had raised the hood or moments before, Moulster told him that the station wagon belonged to the accused. Until that disclosure, Roberts believed it belonged to Moulster.

After his inspection of the station wagon, Roberts directed his assistants to bring both Pullam and the accused to the premises. In due course they arrived. Pullam identified the tires and other items as his property. Roberts took possession of all the articles.

Roberts testified he informed the accused he was suspected of larceny, and was "under apprehension." He also testified that the accused was then fully informed of his rights under Article 31, Uniform Code of Military Justice, 10 USC § 831. The accused thereupon told him he had not stolen the parts identified by Pullam as his, but that he had purchased them from an "unknown soldier" at Fort Riley. He also admitted that among the items he purchased were a toolbox and tools; these were in his other car, which was

---

[1] The tires were purchased in Quincy, Illinois.

parked on the post. At this point, there is a sharp conflict between Roberts' testimony and that of the accused. Roberts maintained the accused consented to take him to the car and "gave permission" to search it. He said they proceeded to the parking lot, and the accused's car. The accused unlocked the trunk, and took out a toolbox which he gave to Roberts. The box was newly painted, but Pullam identified the tools in it as his, particularly a wrench which he had made himself. According to the accused, he was directed by Roberts to take him to the car on the post and ordered to open the trunk.

Following recovery of the toolbox, the accused was brought to the Criminal Investigations Detachment Office. There, he was again advised of his rights under Article 31. For a time, he continued to insist he had purchased the articles. Later, he began to question Roberts as to what might happen to him if, " 'for instance,' " he had taken Pullam's car. Roberts told him he could make no promises, and could give him no assurances as to the disposition of the charges. After a while, the accused said, " 'Okey, I'll tell you the truth.' " He told Roberts he and another soldier had taken Pullam's car and stripped it for the parts. The oral statement was reduced to writing and signed by the accused.

At trial, defense counsel objected to the admission in evidence of all the car parts and the accused's statements on the ground they were either obtained directly in an illegal search or were the "fruits" of an illegal search. He objected to the pretrial statements on the additional ground that the accused had not been advised he had a right to consult counsel and to have counsel present during the interrogations by Agent Roberts. The law officer ruled that the search of the station wagon was lawful; that the search of the accused's car on the post was based upon consent; and that there was no legal requirement the accused be informed, before questioning, that he had a right to counsel during the interrogation. These rul-

400

ings were sustained by the board of review.

Appellate defense counsel contend this case is substantially like United States v Garlich, 15 USCMA 362, 35 CMR 334, in which the Court held the search violated the Fourth Amendment. There are indeed similarities between the evidence in *Garlich* and the evidence in this case, but material differences also exist. In *Garlich*, as here, the accused's immobilized automobile was parked on property belonging to another. The property owner gave a Navy master-at-arms permission to enter upon the premises and search the vehicle. The Court held that the landowner's consent did not deprive the accused of the right to object to the illegality of the search. The Court determined the search was illegal because it was made without a warrant and the evidence did not indicate that the master-at-arms identified any of the articles in the interior of the car as property previously reported stolen. In this case there was no warrant authorizing a ▮ search of the car, but Agent Roberts testified he identified the tires and wheels and the Permalube oil cans as part of the stolen property. These objects were on the ground in plain sight. Since Agent Roberts was legitimately on the premises, and the articles were exposed to view and on open ground, they were subject to immediate seizure as the fruits of a reported crime. United States v Burnside, 15 USCMA 326, 330, 35 CMR 298; United States v Myers, 329 F2d 280 (CA3d Cir) (1964).

Unquestionably, the presence of some of the stolen property, in and ▮ around the car, provided ▮ probable cause to believe ▮ that other articles, such ▮ as the battery and generator, might have been installed in it. However, except in certain circumstances, such as a search incident to an arrest or when confronted with a significant possibility of the destruction or removal of the object of the search, probable cause does not justify a warrantless

search of private property. United States v Garlich, supra, 367, 368; Smith v United States, 335 F2d 270 (CA DC Cir) (1964). At trial, Roberts testified he searched the car because he "apprehended . . . [the accused] at that location." He admitted, however, that he knew the accused was already "under apprehension" when he was brought from the post to Moulster's house by the agents. It is apparent, therefore, that the search and seizure cannot be justified as incidental to the accused's arrest. The place and time of an arrest must be intimately connected with the place and time of the search to justify the latter as an incident of the former. United States v Herberg, 15 USCMA 247, 35 CMR 219; United States v Ross, 13 USCMA 432, 32 CMR 432. Telling the accused again that he was "under apprehension," after he had been physically brought to the car, did not constitute an arrest at the situs of the car.

On this appeal, the Government contends Roberts was authorized to open the hood of the car because he believed it belonged to Moulster, and Moulster had consented to a search of his property. Whether the *Garlich* case is opposed to this contention, as the accused maintains, need not detain us. Neither need we determine whether Roberts' equivocal testimony as to when he was informed the car belonged to the accused is sufficient to support a finding that he believed the vehicle was Moulster's at the moment he raised the hood to uncover the motor compartment. For the purposes of this appeal, we assume that Roberts could not properly examine the motor compartment. On that assumption the battery, generator, and voltage regulator were inadmissible in evidence.

The remaining items of stolen property recovered by Agent Roberts were the toolbox and the tools. These, as noted earlier, were obtained from the trunk of another car belonging to the accused. At trial, the law officer ruled they were secured from the accused with his consent. The board of review also "weighed the evidence on this question" and made the same determination.

Consent to a search is not presumed. It must be proved by the Government "by clear and positive testimony, and it must be established that there was no duress or coercion, actual or implied." United States v Herberg, supra, page 253; United States v Berry, 6 USCMA 609, 20 CMR 325. Special caution is required when the consent is obtained from a person in police custody. United States v Justice, 13 USCMA 31, 34, 32 CMR 31. Whether there is consent or mere acquiescence in, or submission to, the apparent authority of a law enforcement officer depends upon the facts in each case, with precedents being "at best, of doubtful value." United States v Berry, supra, page 613.

Here, the accused, after full warning of his right to say nothing, told Roberts he had purchased the property from another serviceman. The toolbox had been repainted, and its altered appearance could lend some credence to his explanation. The accused, therefore, could derive some advantage from voluntarily turning over the box to Roberts. Roberts testified the accused told him the box was in his other car, which was parked on the post. He asked the accused's "permission to search" this car, and the accused gave his "permission." He directed Roberts to the parking place, and unlocked the trunk of the car. Asked specifically whether the accused acted "voluntarily" or "was . . . ordered to do it," Roberts answered that the accused acted "voluntarily." The accused also testified on the issue. He did not deny Roberts' account of his explanation for possession of the stolen property, but he contended he was "ordered" to take Roberts to his other car, and directed to open the trunk.

Determination of the conflict in testimony on the question of acquiescence or consent was for the law officer at trial, and for the board of review below. Both decided the matter against the accused. On the basis of the facts es-

tablished by these rulings, we cannot say that, as a matter of law, they do not demonstrate consent. United States v Wilcher, 4 USCMA 215, 15 CMR 215; Wren v United States, 352 F2d 617 (CA 10th Cir) (1965). The toolbox and its contents, therefore, were properly admitted in evidence.

To this point we have determined that part of the stolen property was recovered by lawful means █ and have assumed that part was improperly seized. The latter circumstance requires us to consider whether the accused's later statements were excludable, as defense counsel contended, under "the fruit of the poisonous tree" doctrine. In the *Herberg* case, we held that the law officer's incorrect ruling on the legality of a search prevented the defense from presenting evidence as to the effect of the search upon the accused's later confession. Here, the circumstances under which the accused made his statements were fully developed. Without impeachment or contradiction, Roberts testified that after he took custody of all the articles found in and around the accused's car on Moulster's property, he again advised the accused of his rights under Article 31. The accused continued to insist he had legitimately acquired the articles from another soldier. It is thus apparent the accused himself rejected the thought that the "jig was up" because the stolen property was found in his possession and he might as well confess. The evidence, therefore, demonstrates that in the accused's "own view . . . the confession was in no way a result of the search." United States v DeLeo, 5 USCMA 148, 163, 17 CMR 148.

A second aspect of the attack on the admissibility of the accused's pretrial statements is that he █ was not preliminarily advised he had a right to counsel during the interrogations. In United States v Wimberley, 16 USCMA 3, 36 CMR 159, we construed the holding of the Supreme Court of the United States in Escobedo v Illinois, 378 US 478, 12 L ed 2d 977, 84 S Ct 1758 (1964), on the admissibility of a confession obtained during interrogation by police officers as not to require that the suspect be affirmatively informed he has a right to consult counsel. Thereafter, the Supreme Court held that due process under the Constitution requires that, before custodial questioning, the accused be specifically informed "he has a right to the presence of an attorney, either retained or appointed." Miranda v Arizona, 384 US 436, 444, 16 L ed 2d 694, 86 S Ct 1602 (1966). Assuming *Miranda* applies to the military, in Johnson v New Jersey, 384 US 719, 721, 16 L ed 2d 882, 86 S Ct 1772 (1966), the Supreme Court held that *Miranda* had no retroactive application and extended "only to cases in which the trial began after the date" of the decision in *Miranda*. This case was tried almost a year before the *Miranda* decision. It follows, therefore, the failure to advise the accused that, in addition to his rights under Article 31, he also has a right to the presence of counsel during custodial interrogation is not reversible error. The record of trial indicates the court-martial was instructed it could consider the failure to advise the accused of his right to counsel during interrogation as a circumstance affecting the voluntariness of his statements. Even according great weight to the absence of advice as to the right to counsel, we cannot conclude that the pretrial statements were factually involuntary. Cf. Davis v North Carolina, 384 US 737, 16 L ed 2d 895, 86 S Ct 1761 (1966).

Left for decision is the effect of the improper admission in evidence of the stolen articles found under █ the hood of the accused's car. We have pointed out that many of the stolen articles were properly obtained by Agent Roberts. We have also noted that the accused's pretrial statements were not the products of an illegal search. It is apparent, therefore, that, at best, the articles taken from the motor compartment were merely cumulative evidence of guilt, and were not significant factors in the court-martial's verdict. United States v Simpson, 15 USCMA 18, 22, 34 CMR 464.

The decision of the board of review is affirmed.

Judge KILDAY concurs.

FERGUSON, Judge (concurring in the result):

I concur in the result.

I agree the accused consented to the search of his second vehicle and that, as his case was tried before the effective date of the rules laid down in Miranda v Arizona, 384 US 436, 16 L ed 2d 694, 86 S Ct 1602 (1966), he is not entitled to the benefit thereof. Johnson v New Jersey, 384 US 719, 721, 16 L ed 2d 882, 86 S Ct 1772 (1966). As to the search of the car on Moulster's premises, I am convinced that raising its hood in order to determine if known stolen components had been added thereto constituted an unlawful search and seizure. United States v Garlich, 15 USCMA 362, 35 CMR 334; United States v Herberg, 15 USCMA 247, 35 CMR 219. The agent knew the car was immovable, and "it more closely represented a structure on a piece of real property." United States v Garlich, supra, at page 370. The more liberal rules of searching an automobile capable of movement out of the locality do not, therefore, apply. See Carroll v United States, 267 US 132, 69 L ed 543, 45 S Ct 280 (1925). And, as was said in Preston v United States, 376 US 364, 11 L ed 2d 777, 84 S Ct 881 (1964), "the search of the car without a warrant failed to meet the test of reasonableness under the Fourth Amendment, rendering the evidence obtained as a result of the search inadmissible."

Under my view of the law, this conclusion would require reversal, for, as I stated in my dissenting opinion in United States v Simpson, 15 USCMA 18, 34 CMR 464, evidence so obtained and used against an accused violates a constitutional norm and thus necessitates another trial. The contrary rule of specific prejudice, however, has been adopted by the Court. Under the law of the Court at this time, therefore, I join with my brothers in affirming the decision of the board of review.