**UNITED STATES**

v.

Private First Class (E–3) Robert G. McLELLAN, 469–54–6471, U.S. Army, 19th Army Postal Unit, APO San Francisco 96301.

CM 430712.

U. S. Army Court of Military Review.

23 July 1975.

576

Appellate counsel for the Accused: CPT
Robert D. Jones, JAGC; LTC James Kuc-
era, JAGC; LTC Edward S. Adamkewicz,
Jr., JAGC; COL Victor A. DeFiori, JAGC.

Appellate counsel for the United States:
CPT John T. Schmutz, JAGC; CPT David
A. Schlueter, JAGC; LTC Donald W. Han-
sen, JAGC; LTC Ronald M. Holdaway,
JAGC.

## OPINION OF THE COURT

JONES, Senior Judge:

The appellant was convicted by general
court-martial of stealing mail matter, pos-
sessing marihuana, and violating a general
regulation by possessing United States cur-
rency, in violation of Articles 134 and 92,
Uniform Code of Military Justice, 10 U.S.C.
§§ 934 and 892. We are concerned on this
appeal with the legality of an apprehension
and subsequent searches, the admissibility
of appellant's confession, the adequacy of
the staff judge advocate's review and the
reasonableness of the post-trial delay.

## I

As the appellant was leaving his compound in Korea, the Korean gate guard noticed he was carrying a package under his arm. The package was partially concealed and the appellant appeared to be trying to hide it with a field jacket he had draped over his shoulder. The guard asked if the package belonged to appellant and the appellant replied in the affirmative. The guard then looked closer at the package and noticed it was addressed to a captain. He thereupon asked the appellant to wait while he called the military police.

When the military police arrived the senior member of the team, a sergeant, looked at the package and noted it was a sealed, unopened piece of US mail addressed to a Captain Holmes. The sergeant then apprehended appellant for suspicion of theft of US mail, searched him for weapons, and took him to the Provost Marshal's office. At the office the sergeant again searched the appellant to inventory his property before placing him in the detention cell. At that time he discovered in appellant's pockets and under his fatigues a pipe cleaner packet containing marihuana, a package containing a five-piece knife set, and $64.00 in United States currency. The package the appellant had tried to take out through the gate under his arm contained an oscilloscope kit.

The appellant maintains the oscilloscope kit, knives, marihuana, and currency were improperly admitted as they were the fruits of an unlawful apprehension by the gate guard. We disagree. When the guard saw the appellant trying to conceal a package as he went out of the compound the guard had a duty to check further. When he also saw upon closer inspection that the package was addressed to a captain, a grade that differed from the grade of the appellant, he had a reasonable basis for asking the appellant to come to his gate while he called the military police. In our opinion this action by the guard amounted to neither an apprehension nor a search. Rather, it was an administrative inspection by a gate guard at an Army installation in a foreign country. The guard's actions were a " 'crucial part of the regulatory scheme' of a Government program and present[ed] only a limited threat to the individual's expectations of privacy. . . ." *United States v. Poundstone*, 22 U.S.C.M.A. 277, 280, 46 C.M.R. 277, 280 (1973). As the Court of Military Appeals further indicated, the test is one of reasonableness, regardless of whether it is called a search or an administrative inspection. We are convinced the guard's actions were eminently reasonable and in no manner tainted the otherwise legal searches that were conducted subsequently by the military police.

## II

At the time the military police sergeant apprehended the appellant at the gate, he advised him of his rights under Article 31, UCMJ, 10 U.S.C. § 831. The appellant requested counsel. The sergeant then "didn't ask him any more questions . . ." and took him to the Provost Marshal's office. After the inventory search which was conducted at the Provost Marshal's office in front of the desk sergeant disclosed the stolen and contraband items, the appellant was told of the new charges of which he was suspected and again advised of his rights. Again the appellant requested counsel and again the military police refrained from asking questions. The initial request for counsel was made at approximately 6:00 p. m. and the second request was made about 30 minutes later.

The military police desk sergeant called the CID to take over the investigation but did not call for counsel for the appellant although he knew appellant had requested counsel. The CID investigators arrived about 10:00 p. m., warned appellant of his rights, including his right to counsel, and took an oral statement from him. The desk sergeant did not advise the CID investigators that appellant had requested counsel twice previously and the appellant did not request counsel at this third warning of his rights. We must now determine if this waiver of counsel was knowingly and intelligently made in view of the prior requests and the intervening incarceration.

When an accused or suspect undergoing custodial interrogation requests an attorney, the questioning must stop until the attorney is present. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *United States v. Tempia,* 16 U.S.C.M.A. 629, 37 C.M.R. 249 (1967). An accused may later waive this right but the Government has a heavy burden of establishing the waiver. Paragraph 140a(2), Manual for Courts-Martial, United States, 1969 (Revised edition); *cf. United States v. Solomon,* 17 U.S.C.M.A. 262, 38 C.M.R. 60 (1967); *United States v. Rogers,* No. 429708 (A.C.M.R. 30 May 1974); *United States v. Miller,* 42 C.M.R. 747 (A.C.M.R.1970).

That the appellant was under custodial interrogation was established by the military policeman who testified that he refrained from asking questions each time appellant requested counsel. The fact that he requested counsel was not disputed. The question then resolves to whether the Government met its burden of showing that the appellant knowingly and intelligently waived his right to consult with counsel. We do not believe the Government met its burden. The appellant was warned of his rights three times in a four and one-half hour period. A government agent, the military police desk sergeant, failed to seek counsel for appellant after the first two requests and failed to advise the CID investigator that appellant had previously requested counsel. Although appellant stated he didn't think of asking for counsel at the third warning, he also said he didn't think it would do him any good to ask since he had twice previously made a request and no counsel had been furnished in the intervening four hours. Under these circumstances, we are not convinced beyond a reasonable doubt that the Government established a voluntary, knowing, and intelligent waiver.

The use of the oral statement was therefore error and "requires reversal as to those offenses to which the statement relates, regardless of the compelling nature of the other evidence of guilt . . . [citations omitted]." *United States v. Kaiser,* 19 U.S. C.M.A. 104, 41 C.M.R. 104 (1969). As the appellant's statement related to all three offenses, reversal is required as to all three.

## III

One hundred thirty days elapsed from the completion of the trial to the authentication of the record. Another 50 days passed until the convening authority's action. The record of trial was not lengthy (97 pages) and the post-trial review was relatively short and uncomplicated. We therefore find that this unexplained 180 day delay in the convening authority's action to be unreasonable. *United States v. Timmons,* 22 U.S.C.M.A. 226, 46 C.M.R. 226 (1973). As the delay occurred prior to the effective date of the decision in *Dunlap v. Convening Authority,* 23 U.S.C.M.A. 135, 48 C.M.R. 751 (1974), the rule concerning post-trial delay that was in effect prior to *Dunlap* is controlling. That general rule is "that post-trial delay standing alone without prejudicial error in the trial proceedings, will not require relief on otherwise proper findings and sentences." *United States v. Timmons, supra.*

In the instant case, in addition to the error in the admissibility of the oral confession of the appellant, there is error in the staff judge advocate's post-trial review. First, he failed to advise the convening authority that appellant's company commander recommended appellant not be eliminated from the service, *United States v. Parker,* 22 U.S.C.M.A. 358, 47 C.M.R. 10 (1973). Second, he failed to discuss the legality of the apprehension, search, and seizure and the admissibility of the oral statement.

We would normally consider the effect of these post-trial review errors to determine whether the appellant has been prejudiced and if so what remedy should be invoked. *United States v. Timmons, supra.* In this case, however, that step is merely cumulative because of our determination of error in the admission of appellant's oral statement. The use of the statement requires reversal. *United States v. Kaiser, supra.* Although a rehearing could be authorized in this case, in view of the post-tri-

al delay and the fact the trial occurred more than two years ago, the interest of justice requires dismissal of the charges.

The findings of guilty and the sentence are set aside and the charges are dismissed.

O'DONNELL, Judge, concurring:

I agree with Senior Judge Jones that the appellant's statement was inadmissible because the Government did not meet its burden of establishing that the appellant did not waive his right to consult with counsel.

I also agree that the military judge properly admitted into evidence the package being carried by the appellant. However, I reach this conclusion on the basis of the plain view doctrine. *See Harris v. United States*, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968); *United States v. Decker*, 16 U.S.C.M.A. 397, 37 C.M.R. 17 (1966). In my opinion, the record does not support a finding that the action of the gate guard amounted to an administrative inspection, " 'a crucial part of the regulatory scheme' of a Government program." *United States v. Poundstone*, 22 U.S.C.M.A. 277, 280, 46 C.M.R. 277, 280 (1973). The duties of the gate guard were not established at trial, not to mention the factual predicate for a finding of a regulatory scheme.

I agree with Senior Judge Jones as to the errors in the post-trial review.

VINET, Judge, concurring in part and dissenting in part:

I agree with Senior Judge Jones that the staff judge advocate erred in not advising the new convening authority in this case that appellant's company commander was of the opinion that appellant should not be eliminated from the service. I also concur with respect to the apprehension and searches. I do not agree, however, that the Government failed to show that the appellant freely, knowingly and intelligently waived his right to counsel. The facts in this case are clearly distinguishable from those in *Miranda* and *Gunnels* * on *which the Court of Military Appeals relied in deciding Solomon, supra.* Here there was no interrogation, custodial or otherwise, prior to the arrival of the CID investigators. Furthermore, when asked on cross-examination why he didn't tell the CID interrogator that he had asked earlier for a lawyer and hadn't yet seen one, the appellant replied: "At the time I just didn't think of it." *See United States v. Brown*, 48 C.M.R. 181 (A.C.M.R.1973).

---

* *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *United States v. Gunnels*, 8 U.S.C.M.A. 130, 23 C.M.R. 354 (1957).