### UNITED STATES

#### v.

**Private First Class E–3 Shane L. HILL, 373–70–2692, U. S. Army, 541st Engineer Company, 549th Engineer Battalion, APO New York 09081.**

#### CM 434629.

U. S. Army Court of Military Review.

Feb. 3, 1977.

CPT Peter V. Train, JAGC, CPT Buren R. Shields, III, JAGC, LTC John R. Thornock, JAGC, COL Alton H. Harvey, JAGC, Appellate Counsel, for the accused.

CPT Gay M. Holmes, JAGC, CPT John F. DePue, JAGC, CPT William C. Kirk, JAGC, COL Thomas H. Davis, JAGC, Appellate Counsel, for the United States.

Before JONES, FULTON and FELDER, Appellate Military Judges.

#### OPINION OF THE COURT

FULTON, Judge:

The appellant is one of four soldiers involved in the robbery of a German taxi driver. Tried by a military judge sitting as a general court-martial for violating Article

122, Uniform Code of Military Justice, 10 U.S.C. § 922, he was convicted and sentenced to confinement for three years, total forfeitures, reduction to the lowest enlisted grade, and a bad-conduct discharge. In our review of the case pursuant to Article 66, UCMJ, 10 U.S.C. § 866, a principal issue concerns the admissibility of a pretrial statement made by the appellant. The statement places the appellant at the scene of the robbery with the other perpetrators, but contains a denial of complicity.

The robbery occurred one evening shortly before midnight. By about 0600 hours the next morning the appellant was in custody as a result of a statement made by the principal actor, who had been apprehended earlier. He was advised of his rights at the military police station by a special agent assigned to the Criminal Investigation Command. The appellant stated that he wanted counsel and did not want to make any statement. The investigator ceased questioning him and turned him over to the military police.

By mid or late afternoon on the same day, the investigator was again in the military police station for the purpose of making out his report. The appellant and the other three suspects were in the detention cell. The investigator approached them and said that he had information in the form of a statement implicating the four in the robbery. Apparently the statement to which the investigator referred was the one made by the principal actor (one of the four occupants of the detention cell), which had led to the appellant's apprehension and questioning in the first place. According to the investigator, the suspects then wanted to talk to him individually.

When it was the appellant's turn to talk to the investigator, he was readvised of his rights and signed a form indicating that he understood his rights and was willing to discuss the offense without a lawyer being present. The investigator did not know whether the appellant had been placed in contact with a lawyer pursuant to the request made several hours earlier. The investigator had made no attempt to arrange

for counsel. "The MP's usually do that," he explained, but he seemingly did not inquire whether the military police had done so. He did not recall asking the appellant whether he had seen a lawyer or why he had changed his mind, but did not think it strange that a suspect would change his mind. In addition to having indicated to the appellant that there was an incriminating statement available, the investigator told him that, if he cooperated, his company commander and the courts would be so advised, but made no other promises. As a result of the interview, the appellant made the statement in which he admitted his presence and knowledge of plans for the robbery, but denied participating in the robbery itself.

█ As the military judge, after hearing the testimony summarized above and the arguments of counsel, overruled the defense objection to admission of the appellant's statement, he necessarily found that the Government had met the burden of establishing a voluntary, knowing, and intelligent waiver of the right to counsel. We believe that he was correct. The facts bear a superficial resemblance to those in *United States v. Heslet*, 23 U.S.C.M.A. 88, 48 C.M.R. 596 (1974), in which the investigator, to whom the accused had asserted his right to counsel, questioned him the next morning "without any effort to determine whether he still wished to confer with counsel beyond a repetition of the earlier warning." That questioning, however, was tainted by the fact that the investigator had not ceased questioning when the right to counsel was asserted and already had obtained an admission from the accused the night before. *United States v. Heslet*, 23 U.S.C.M.A. at 89, 48 C.M.R. at 597.

In this case, the appellant's right to cut off questioning had been respected. He was not questioned in violation of an existing attorney-client relationship. *Cf. United States v. McOmber*, 24 U.S.C.M.A. 207, 51 C.M.R. 452, 1 M.J. 380 (1976). Also, unlike the situation that confronted this court in *United States v. McLellan*, 51 C.M.R. 90, 1 M.J. 575 (1975), there is no

indication that the failure to furnish counsel promptly influenced the appellant's later decision not to request counsel. His statement was made after being confronted, apparently for the first time, with the nature of the evidence against him and questioning was resumed only after he indicated a desire to talk further with the investigator and expressly waived his right to counsel. Accordingly, the trial judge did not err in admitting appellant's confession in evidence. *See United States v. Pheaster*, 544 F.2d 353 (9th Cir. 1976).

■ The appellant's assertion that he was prejudiced by not receiving a copy of the record of trial before the convening authority's action is without merit. The record discloses circumstances amounting to compliance with the spirit of Article 54(c), Uniform Code of Military Justice, 10 U.S.C. § 854(c). *See United States v. Cruz-Rijos*, 24 U.S.C.M.A. 271, 274, 51 C.M.R. 723, 726, 1 M.J. 429, 432 (1976).

■ The approved findings of guilty are affirmed. Reassessing the sentence based upon the entire record, including evidence of the appellant's lesser degree of involvement than his coactors (he alone was acquitted of conspiracy) and the sentences they received, only so much of the approved sentence as provides for a bad-conduct discharge, confinement at hard labor for fourteen months, forfeiture of all pay and allowances, and reduction to the grade of Private E-1 is affirmed.

Senior Judge JONES and Judge FELDER concur.