UNITED STATES

v.

Senior Airman Raymond HOLSWORTH, FR 559–02–8331, United States Air Force.

ACM S24594.

U. S. Air Force Court of Military Review.

Sentence Adjudged 15 Dec. 1977.

Decided 1 Aug. 1978.

Appellate Counsel for the Accused: Colonel B. Ellis Phillips and Captain Wade B. Morrison.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., and Major Alvin E. Schlechter.

Before EARLY, HERMAN, ORSER and ARROWOOD, Appellate Military Judges.

## DECISION

EARLY, Chief Judge:

Tried by special court-martial, the accused was convicted, despite his pleas, of wrongfully introducing marijuana into a military base and of wrongfully possessing marijuana, both in violation of Article 134, Uniform Code of Military Justice, 10 U.S. C.A. § 934. The approved sentence extends to a bad conduct discharge, confinement at hard labor for six months, forfeiture of $265.00 per month for six months and reduction to airman basic.

Appellate defense counsel assign three issues. The first two are without merit and warrant no further discussion. The third assignment challenges the ruling of the military judge admitting three prosecution exhibits into evidence on the ground that they were seized as the result of an illegal stop and search. We disagree.

The accused was one of two passengers in a car driven by another airman which attempted to enter the Koblenz gate at Hahn Air Base, Germany. The car was stopped at the gate by a security policeman who informed the three occupants that, under the authority of the base commander,[1] he was conducting a random vehicle inspection. The occupants of the car, in accordance with instructions, left the car and went to the area of the gate guard shack. The driver was asked to stand nearby and observe the search of the car conducted by the security policeman. Just as the search began, the security policeman observed a small amount of green vegetable matter, which he thought was hashish, and called the other security policeman over to see it. As the search resumed, the accused ran from the area toward the perimeter fence and threw a white package over the fence. At this point the airmen were apprehended and searched. A small canister containing hashish was found on the accused's person. The white package was subsequently located and was found to contain the marijuana which made up the first specification of the charge.

Appellate defense counsel contend that the stopping of the vehicle for search was illegal since the "random search" was not strictly in terms of the authority given by the base commander. They base their contention on the fact that the written orders authorizing searches on the night in question covered only the period 0200–0400 hours and the vehicle was stopped at 0145 hours.[2] Both the staff judge advocate and the Government on appeal assert that the accused's action in throwing the contraband over the fence was his own act and not the result of the vehicle search and that the search of his person resulted from his apprehension for disobeying the order of the security policeman to halt.[3]

1. Authority to search vehicles entering or leaving Air Force installations is found in Air Force Regulation 125-37, 21 December 1973, para. 3-4. This basic delegation was supplemented by USAFE Supplement 1, 19 November 1975, which states, in pertinent part:

Installation commanders will establish a program for conducting periodic random searches of vehicles entering and departing their installations. . . . The actual number of inspections will be determined locally based upon an analysis of the installation's suspected drug and theft problem. A recommended formula would be 1% of the average vehicle count passing through the gates per month. . . .

Hahn Air Base supplement 1 to AFR 125-37 provides:

Random searches of privately owned vehicles entering and departing Hahn Air Base will be conducted using the following procedures:

(1) The security police law enforcement superintendent will prepare a monthly schedule of random times and dates for vehicle searches. This schedule will contain 20 times and dates from which only five times and dates will actually be used. . . .

(2) Each check will include at least 10 vehicle searches. Upon completion of the search of the first vehicle, the next vehicle entering or departing will be searched. A minimum of 50 vehicles a month will be searched.

2. There was evidence that the airmen had approached the main gate, saw that a search was in progress and went instead to the Koblenz gate.

3. When the accused was observed to run toward the fence, one of the security policemen called to him to halt. He ignored the command, and instead ran to the fence and threw an object over the fence. The security police-

We believe this case is governed by *United States v. Rivera*, 4 M.J. 215 (C.M.A.1978), since the search was conducted in a foreign country at the entrance to a base under United States authority.[4] In *Rivera*, the accused was stopped as he attempted to enter an Air Force base in Thailand and a search of his person disclosed heroin. In upholding the constitutional validity of the search, Chief Judge Fletcher analogized the gate search to a custom search at the border of a country. Therein, he held:

> [S]earches made at the border, pursuant to the longstanding right of the sovereign to protect itself by stopping and examining persons and property crossing into the country, are reasonable simply because they occur at the border.
>
> .     .     .     .     .
>
> The magnitude of the service's need—to maintain the security of the installation on foreign soil and to combat an ever increasing drug traffic problem—when coupled with the reasonableness of the procedures I would authorize persuade me that each search meets the requirements of the Fourth Amendment.

4 M.J. 216, 217–8. (footnotes omitted)

■ We read *Rivera* to mean that the powers of search authority possessed by an installation commander of an overseas base are more plenary than that possessed under similar circumstances in the United States. We find nothing illegal in the procedures as set up in the instant case for the random gate searches of vehicles either as to the manner or degree of intrusion specified when balanced against the need of the service to protect its installations from the

introduction of contraband drugs. See *United States v. Ramsey*, 431 U.S. 606, 97 S.Ct. 1972, 52 L.Ed.2d 617 (1977); *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *Boyd v. United States*, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886); *United States v. Rivera*, supra.

■ Here, however, the challenge is not to the authorized procedures but to the fact that the procedures were not precisely followed as to the times for searches. The evidence adduced at trial discloses that the prescribed times for searches on the 23d of July, the date in question, were from 0200 to 0400. Complicating this situation was the fact that the security police duty shift began on the 22d of July at 2300 hours and terminated on the 23d of July at 0700 hours, and that the prescribed times for searches on the 22d were from 0100 to 0300 hours. The security police supervisor mistakenly used the hours for the day on which the duty shift began rather than the correct hours for the date in question. He instructed his subordinates to begin the searches at 0100 hours, and they responded in accordance with his instructions. The car containing the accused was the first to enter the Koblenz gate after 0100 (arriving at 0145 hours). The issue thus presented is whether this misselection of hours represented an attempt by the enforcement personnel to extend the authority granted to them,[5] or to exercise their own discretion in the selection of vehicles to be searched.[6] We hold that, under the facts of the instant case, it did not.

■ The reason for requiring the "random selection" of vehicles is "to insure the

---

man caught the accused and advised him that he was apprehended for disobeying the order. After that all three occupants were apprehended and searched. We need not decide here whether the accused's act of abandoning the contraband triggered a different legal standard, see *United States v. Purite*, 3 M.J. 978 (A.F.C.M.R.1977), pet. granted, 4 M.J. 220 (C.M.A.1978), since we conclude that the stop was permissible. See also, *United States v. Wilson*, 492 F.2d 1160 (5th Cir. 1974), cert. denied, 419 U.S. 958, 95 S.Ct. 106, 42 L.Ed.2d 92 (1974).

4. "Such a seizure of persons at the gate of a military base within the United States is fundamentally dissimilar to the one in *United States v. Rivera*, 4 M.J. 215 (C.M.A.1978), due to its situs in our own country." *United States v. Harris*, 5 M.J. 44, 66 (C.M.A.1978), Fletcher, C.J., concurring; see also *United States v. Unrue*, 22 U.S.C.M.A. 466, 47 C.M.R. 556 (1973).

5. See *United States v. Rotramel* 1 M.J. 559 (A.F.C.M.R.1975).

6. See *United States v. Harris*, 5 M.J. 44 (C.M.A. 1978).

least possible intrusion into the constitutionally protected area, and thereby preserve freedom from unreasonable invasions of personal privacy . . . ." *United States v. Harris,* supra at 65. Thus, a "procedure must be employed which completely removes the exercise of discretion from persons engaged in law enforcement activities." Ibid.[7] Here the error was administrative in nature only and did not affect the "randomness" of the selection process except as to the time frame within which the searches were to be made. This does not, in our opinion, indicate a conscious "exercise of discretion" by the law enforcement personnel; it merely indicates an area of confusion in the instructions given to them. While we do not condone such administrative laxity since it could, under different circumstances, connote an unwarranted extension of authority, we cannot, on the facts of this case, ascribe an improper motive to the law enforcement personnel. We hold that here there was no constitutional impediment to the search as conducted, and that the military judge did not err in admitting the products of the search into evidence against the accused.

The findings of guilty and the sentence are

AFFIRMED.

---

7. If the analogy of Chief Judge Fletcher in *Rivera,* supra, were followed, there would be very few limits to the authority to conduct incoming gate searches since the powers of customs agents is far broader than that exercised here, at least to the extent that there is no requirement for "random selection" of persons or property to be searched for contraband. We have no doubt that, under existing law, customs officials may search any person or vehicle entering the country for any reason or even a whim so long as the search occurs at or near the border. See *Almeida-Sanchez v. United States,* 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973) and cases cited therein.