UNITED STATES

v.

**David Wayne KESTELOOT, 381 68 5842, Torpedoman's Mate Seaman Apprentice (E–2), U. S. Navy.**

**NCM 78 0845.**

U. S. Navy Court of Military Review.

Sentence Adjudged 24 Feb. 1978.

Decided 14 Dec. 1978.

LT David S. Durbin, JAGC, USNR, Appellate Defense Counsel.

LCDR Paul B. Thompson, JAGC, USN, Appellate Government Counsel.

Before DUNBAR, Senior Judge, and GLADIS and GRANGER, JJ.

GLADIS, Judge:

The accused was convicted, contrary to his pleas at a general court-martial bench trial, of unauthorized sale of Government property valued at $1,446.00 and larceny of the same property, in violation of Articles 108 and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 908, 921. His sentence consists of a bad-conduct discharge, confinement at hard labor for 10 months, forfeiture of $310.00 per month for 10 months and reduction to pay grade E–1.

The accused contends, first, that the testimony of a key witness, his confession, and a watch seized from his locker were inadmissible because they were discovered as the result of an illegal search and, second, that the offenses were multiplicious for sentencing purposes. We disagree with both contentions and affirm. Although there was an illegal search, the evidence complained of came from an independent source, not exploitation of the search. The larceny and sale were not a single integrated transaction.

## SEARCH

On 17 October 1977, a person or persons unknown broke into the USS SAMUEL GOMPERS Ship's Store Tobacco and Gift Shop and stole merchandise allegedly valued at $2,496.00. Thereafter, a pawn shop owner reported to the San Diego police that Ms. S had sold a $145.00 watch to him for $25.00. A San Diego police officer accompanied by a National City police officer went to the apartment of Ms. S in National City, California, to inquire why she sold the watch for such a cheap price, where she obtained it, and whether there were similar items in her apartment. They entered the apartment and the San Diego officer searched it, discovering several watch boxes on shelves behind a bar in the living room, a box bearing the accused's name containing a stereo set in a closet, and several stereo

sets in the living room. The San Diego officer took Ms. S to the police station, questioned her about the watch and learned that she received it from the accused.[1]

On 26 October, the San Diego police officer advised a Naval Investigative Service agent that Ms. S had pawned a watch identical to one of the watches missing from the Ship's Store and implicated the accused. The following day the agent questioned the accused after warning him of his rights and informed him that Ms. S had been caught pawning one of the watches and had told the police about his involvement. The accused executed a written confession on that date, admitting that he had broken into the shop and taken the merchandise, and consented to a search of his locker which produced a stolen watch. Ms. S testified against the accused at his trial.

The accused objected at trial of the admission of the testimony of Ms. S, his confession, and the watch seized from his locker.

■ When the accused objects to evidence obtained as the result of a search on the ground that the search was unlawful, the burden is on the Government to show either that the search was lawful or that for some other reason the search would not render the evidence in question inadmissible against the accused. *Manual for Courts-Martial, United States, 1969* (Revised edition), paragraph 152. If the justification for using evidence obtained as a result of the search is that there was freely given consent to the search, that consent must be shown by clear and positive evidence. *Manual for Courts-Martial, United States, 1969* (Revised edition), *supra*. Inasmuch as the accused was living in the apartment with Ms. S at the time of the search, we reject the Government's contention that he lacked standing to object to the fruits of the search. *Cf. Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960); *Mancusi v. DeForte*, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968). We also reject the Government's alternate position that Ms. S consented to the search. Wheth-

er there is consent or mere acquiescence in, or submission to, the apparent authority of a law enforcement officer depends on the facts in each case, with precedents being of doubtful value. *United States v. Decker*, 16 U.S.C.M.A. 397, 37 C.M.R. 17 (1966). Under the circumstances of this case, even if we credit the police officer's testimony that Ms. S did not initially object to his entry and search, we cannot say that the Government sustained its burden of establishing freely given consent vice mere acquiescence to the color of authority. Thus we conclude that the search of Ms. S's apartment was illegal. When an accused has standing to and does object, evidence resulting from an illegal search is inadmissible. Such evidence results from the search and is fruit of the poisoned tree if, conceding the illegality of the Government's action, it can be reasonably concluded that the evidence has been come at by exploitation of that illegality rather than by means sufficiently distinguishable to be purged of the primary taint. *United States v. Waller*, 3 M.J. 32 (C.M.A.1977), citing *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

■ The accused must go forward with specific evidence of taint when that is his theory of inadmissibility. *United States v. Hale*, 1 M.J. 323 (C.M.A.1976). We can find none in this case. Ms. S's identity was discovered from an independent source before the search. She would have implicated the accused even if the search had not been conducted. She probably would have implicated the accused sooner, had the police officer's attention not been diverted from his intended questioning during the search. Her identification of the accused was not tainted by the search. Thus, the resultant interrogation and confession of the accused was also untainted. Exploitation of the search did not lead to her testimony. Therefore, her testimony the accused's confession, and the watch recovered from his locker were properly admitted in evidence.

1. The stereo sets had not been stolen from USS SAMUEL GOMPERS Ship's Store.

## MULTIPLICITY

Citing *United States v. Murphy*, 18 U.S.C.M.A. 571, 40 C.M.R. 283 (1969), the accused contends that the larceny and sale were multiplicious for sentencing purposes. Offenses generated by a single impulse do not necessarily demand a conclusion of singleness of punishment, but the integration of events can establish such offenses as multiplicious. *United States v. Harrison*, 4 M.J. 332 (C.M.A.1968). In this case, unlike *Murphy*, the larceny and sale did not constitute a single integrated transaction. Therefore, the offenses were separately punishable. *United States v. Burney*, 21 U.S.M.C.A. 71, 44 C.M.R. 125 (1971).

Accordingly, the findings of guilty and sentence as approved on review below are affirmed.

Judge GRANGER concurs.

DUNBAR, Senior Judge (dissenting):

In my opinion the unlawful search tainted all aspects of the Government's case against the appellant. Particularly, I cannot concur in the speculations contained in the majority opinion regarding the statements of the victim of the unlawful search which implicated the appellant, to wit: "She would have implicated the accused even if the search had not been conducted. She probably would have implicated the accused sooner, had the police officer's attention not been diverted from his intended questioning during the search."

The fact is that the police officers had no knowledge of the appellant until they conducted what the majority concedes to have been an unlawful search of the apartment of appellant's girlfriend. During the illegal search the conducting police officer discovered a Sony radio-type box in a closet at the scene of the search. The box had the name of appellant clearly written on the outside. It is entirely possible the police officers would never have known of appellant were it not for the discovery of his name at that time.

The majority opinion uses language to the effect that the victim of the illegal search "would have implicated the accused," and "probably would have implicated the accused sooner." I consider such speculative inferences to be unwarranted where an issue involving unlawful search and seizure is present.

Although after the search the appellant's girlfriend gave authorities a confession implicating appellant, she really had little choice in the matter because the police officer had already obtained the "clue" and the "lead" he needed, appellant's name. Moreover, the Naval Investigative Service Agent who initially interrogated appellant testified that appellant's initial response to the interrogation was one of "shock, disbelief, reluctance to mentally come to grips with the fact that he had been discovered."

The entry and search of the apartment where appellant's name was obtained was accomplished by an experienced police officer. No efforts were made by him to explain the consent search to the young woman who occupied the apartment with her small children. Further, the evidence depicts appellant to have been an immature individual, overly enamored of the unlawful search victim. The victim stated to the police officer that while appellant was staying at her apartment in National City he became concerned due to the fact that she didn't have much money or much income to support her children. He was also concerned about her using heroin and he stated that he had a plan to get some property from someplace on the ship he was assigned to, get the property to her so she could sell it and make some money for her children and make payments on the apartment, and try to get her off heroin.

Irrespective of all this, I believe a serious question exists relating to the law of search and seizure and the law to be applied to the fruits of illegal searches.

The following language from the concurring opinion in *United States v. Garcia*, 3 M.J. 1090, 1094 (N.C.M.R.1977) is pertinent and emphasizes the problem with which we are dealing:

> Moreover, it may be contended that a freely given consent search, even if

obtained for no reason whatsoever by police authorities, does not infringe upon the rights or liberty of the individual because he is always free to deny the request for such a search. Notwithstanding, I do not believe that search and seizure is a sham legal game that law enforcement officials play with the citizenry. The area of human rights is, has been, and always will be highly sensitive and serious business. . . . Additionally, the average American citizen, military and civilian, is not educated in the semantics or the implications of consent search. And it can be said, almost without fear of contradiction, that the courts have always scrutinized such searches with an exceptional degree of suspicion.

. . .

The difficulty that presents itself in this case is that there is no way to know what eventual results the police investigation would have produced had a police officer not gained illegal entry into the apartment of appellant's lady friend. As noted earlier, the majority hypothesizes that she would have implicated the accused even if the search had not been conducted. Where Constitutional questions concerning search and seizure and the fruit of the poisoned tree are involved, we should apply the law rigorously and strictly.

Accordingly, in my opinion, the appellant's implication in and conviction of the offenses charged can be traced directly back to the fruit of an illegal search. I would disapprove the findings and sentence and dismiss the charges.